### KEMNA v. BROCKHAUS and others.

*(Circuit Court, E. D. Wisconsin. January, 1881.)*

1. CHANGE OF CITIZENSHIP.

"To effect a change of citizenship from one state to another, there must be an actual removal, an actual change of domicile, with a *bona fide* intention of abandoning the former place of residence and establishing a new one, and the acts of the party must correspond with such purpose."

2. SAME—INTENTION—EVIDENCE.

In such case the party may testify to his intention where there has been an actual removal.

3. SAME—TEMPORARY RETURN.

In such case a temporary return to the former place of residence, with views and for objects merely temporary, does not revive the former citizenship.

4. SAME—SAME.

> *Held,* upon the evidence in this case, (1) that such a change of domicile was made, and such a new residence acquired, as established citizenship in another state; and that (2) a temporary return to the former place of residence did not revive such former citizenship.— [ED.

### Plea to the Jurisdiction.

*Jenkins, Elliott & Winkler,* for plaintiff.

*Cotzhausen, Sylvester & Scheiber,* for defendants.

DYER, D. J. This case has been heard upon a plea to the jurisdiction of the court. The complaint alleges that at the time of the commencement of the suit the plaintiff was a citizen of the state of Minnesota. The plea avers that she is, and always has been, a citizen of the state of Wisconsin, of which state the defendants are citizens, and proofs have been taken on the question of the plaintiff's residence and citizenship. The general rule upon the subject of citizenship is well settled. It is that, "in order to give jurisdiction to the courts of the United States, the citizenship of the party must be founded on a change of domicile, and permanent residence in the state to which he may have removed from another state. Mere residence is *prima facie* evidence of such change, although, when it is explained and shown to have been for temporary purposes, the presumption is destroyed. The intention is to be collected from acts." *Lessee of Butler* v. *Farnsworth,* 4 Wash. 101; 1 Abbott, (U. S.) Pr. 211. "If a citizen of one state think proper to change his domicile, and to remove himself and family  *  *  *  into another state, with a *bona fide* intention of abandoning his former place of residence, and to become an inhabitant or resident of the state to which he removes, he becomes immediately upon such removal, accompanied with such intention, a resident citizen of that state within the meaning of the provision of the constitution relative to the jurisdiction of the federal courts, and may maintain an action in the circuit court of the state which he has abandoned.  *  *  *  Time, in relation to his new residence, occupation, a sudden removal back after instituting a suit, and the like, are circumstances which may be relied upon to show that his first removal was not *bona fide* or per-

manent, but will not disprove his citizenship in the place of his new domicile, if the jury are satisfied that his first removal was *bona fide* and without an intention of returning." *Cooper* v. *Galbraith*, 3 Wash. 546. "If there has been an actual removal, with intent to make a permanent residence, and the acts of the party correspond with the purpose, the change of domicile is completed, and the law forces upon him the character of a citizen of the state where he has chosen his domicile." *Butler* v. *Farnsworth, supra.* A temporary return to one's former place of residence, with views and for objects merely temporary, does not revive a former citizenship. *Burnham* v. *Rangely*, 1 Woodb. & M. 7. "If the change of residence or citizenship is apparent only, and there has been, in fact, no change of residence, but only a transfer of apparent residence, *animo revertendi*, to give color of jurisdiction in a suit in the state of actual residence, it may not avail; but, where there is an actual change of residence and citizenship before suit brought, the motive to such change is not material, even if it was a desire to give capacity to sue in the courts of the United States." *Pond* v. *The Vermont Valley R. Co.* 12 Blatchf. 293. So, to effect a change of citizenship from one state to another, there must be an actual removal, an actual change of domicile, with a *bona fide* intention of abandoning the former place of residence and establishing a new one, and the acts of the party must correspond with such purpose.

The plaintiff in the present case is a married woman. She was married in January, 1879. Prior to her marriage she had always resided in Milwaukee. This was the home of her parents. After the marriage, and until August 5, 1880, she and her husband lived and kept house in this city. He is a person of foreign birth, and before his marriage to the plaintiff he had resided in Wisconsin two or three years. After marriage, and while living in this state, he was employed as a traveling salesman for Chicago and Milwaukee houses. On the fifth of August, 1880, the plaintiff and her husband, with one child and a nurse, left Milwaukee and went to Minnesota. This suit was begun about September 17, 1880. It is

not shown that the removal was made for the purpose of bringing a suit in this court, or that a suit was then contemplated. There is no proof that counsel had been consulted about a suit when the parties removed from the state. Before the departure they broke up housekeeping, and packed and put in store their household furniture. The plaintiff's husband, I conclude, from all the evidence, was then in limited circumstances pecuniarily, for the furniture was pledged for an advance of money under an agreement to pay exorbitant interest, and has since remained in Milwaukee encumbered by chattel mortgage. The testimony of the plaintiff is to the effect that arrangements were made to go to Glencoe, Minnesota, where her husband was to engage in mercantile business. They went first to St. Paul, she remaining there, and he going to Glencoe. She testifies that, on account of disagreements with the persons with whom he was to be associated, the business enterprise at the latter place failed, or was not entered upon, and he returned to St. Paul. There they rented furnished rooms, and, as she expresses it, kept house. Their child and nurse were with them. The plaintiff's husband, it appears, did not become established in any permanent business. His situation was evidently that of one seeking employment. Thus they were living when this suit was commenced, and so afterwards continued. Subsequently, but not until about the month of December, 1880, the plaintiff's husband entered into the service of a mercantile house in Chicago, as traveling salesman in Minnesota and Dakota. In the latter part of December they came to Milwaukee, and from that time to the present the plaintiff has remained at a hotel in this city, and her husband has been with her part and perhaps most of the time. It is not shown that they gave up or abandoned their rooms in St. Paul, and the plaintiff testifies positively that they came here to await the trial of this cause, and with the intention to return to St. Paul when it should be disposed of; and it seems that the plaintiff's husband returned to Minnesota before this hearing. The plaintiff has also testified that her purpose was to return to Minnesota as soon as the trial of this case should be

concluded; that she and her husband went there in August to permanently reside, and for the purpose of making that state their permanent home; that their original intention was to locate in Glencoe, but, on failure of the contemplated business enterprise there, they concluded and thereafter intended to remain in St. Paul as their place of residence, and that when this suit was begun they had no intention of returning, and have not since intended to return, to Wisconsin to reside.

These are the prominent features of. the plaintiff's testimony. There are other portions of her testimony which, it is proper to remark, ought to be considered with a good deal of allowance, such as that relating to her husband's business affairs, his personal intentions, his supposed naturalization as a citizen, and his voting at the election in St. Paul; because, presumably, her knowledge of those matters was obtained by communication from him.

But the question is, do not the facts, to the extent that they are established by testimony which the court ought to accept as pertinent and legitimate, make a case of citizenship in another state, within the rule laid down by the authorities?

Since the question is one of mixed law and fact, and since so much may depend upon intention, in connection with the acts of the party and the circumstances of the case, it is sometimes difficult to determine when there has been such a change of domicile as destroys a former citizenship and establishes a new one. The plaintiff has testified, under objection, to the intentions and purposes of herself and husband. It is true, as argued, that intention is to be collected from acts, and therefore it is not competent for a party to prove his own declarations of intention, made before any acts done, in order to give character to his subsequent acts. But where acts *have been done*, such as actual removal from one place to another, it is, as I understand, competent in a case like this for the party to testify to his purpose and intention as connected with those acts, when they are brought in question, precisely as, in a case where fraud is charged, an actor in the

transaction may be asked directly whether any fraud was intended.. It is, of course, the duty of the court in such cases to scrutinize the acts, to see if they correspond with the alleged purpose. It is apparent that the circumstance of the plaintiff's return to Milwaukee in December was one, which, if unexplained, would tend to throw doubt upon the permanancy of the alleged settlement in Minnesota. But if her return was for an object merely temporary, as she alleges, then her domiciliary *status* in that state would not be affected.

Comment was made upon the fact that the plaintiff's husband pledged their household furniture and left it in the hands of a pawnbroker, at the time they removed to Minnesota, as a circumstance indicative of a purpose not to abandon their residence in Milwaukee. While the situation in which their furniture was placed has a bearing upon the pecuniary ability of the husband to engage in business, it has seemed to me that the fact that the parties broke up housekeeping, stored their furniture and pawned it for money, which must have enabled them to remove from the state, tends rather to corroborate the claim that the removal was made with a view of establishing a permanent residence elsewhere, than otherwise. The plaintiff's home had always been in Milwaukee. Here her parents and family resided. Why should these acts be done unless there was a *bona fide* intention to remove to another state? The court cannot infer that they were done merely to enable her to begin this suit in this court, in the absence of any proof tending in that direction.

To adopt the view taken by the learned counsel for the defendants, involves, as I conceive, the utter rejection of the plaintiff's testimony as quite unworthy of belief. I do not think it is sufficiently impeached to justify the court in so doing as to material matters whereof she speaks from avowed personal knowledge ; and we have to settle the question upon the weight of credible evidence as it is now presented to the court. There was a breaking up by the parties of household life in Milwaukee. There was an actual removal to another state. There appears to have been an intention to remove to a fixed place in that state, followed by a change to another

place, because of the failure of business projects. There was a continued residence in the alleged new domicile, and the testimony is that the return to the former domicile was for temporary purposes only. The place of business of the plaintiff's husband, according to the present showing, is in the state to which the parties have gone. And although the court might wish that the proof was more adequate and the circumstances more conclusive, I think upon the evidence, as it stands, it must be held that such a change of domicile was made and such a new residence was acquired as established citizenship in another state.

I do not see how the alleged alienage of the husband can affect the question. It is the citizenship of the plaintiff that is involved. She had been a citizen of Wisconsin. Her domicile and residence would follow that of her husband. With his change of residence her residence and citizenship, especially if she personally accompanied him, would change, and his legal *status* as to residence would be hers. His national citizenship would not, I think, affect her citizenship when her actual residence followed his. On the whole, my opinion is that the plaintiff should have judgment in her favor on the issue raised by the plea.